UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GARY BRACK, | ) | Case No. 1:19-cv-1436 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | William H. Baughman, Jr. |
| ARMOND BUDISH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

Plaintiff Gary Brack served as MetroHealth's interim director of nursing at the Cuyahoga County jail until removed from that position following answers to questions he provided to members of the Cuyahoga County Council at a public meeting in May 2018. He alleges that Defendants fired him in retaliation for these public comments. For seven weeks in 2018, during the events at issue, Defendant Earl Leiken served as the chief of staff to Cuyahoga County Executive Armond Budish. Plaintiff names Mr. Leiken as a defendant in his individual capacity. He moves for judgment on the pleadings on most, but not all, of the claims pending against him. For the reasons that follow, the Court **GRANTS** his motion.

STATEMENT OF FACTS

In the current procedural posture, the Court takes the following facts pled in the amended complaint as true. Also, the Court limits this statement of facts to those relevant to evaluating Plaintiff's claims against Mr. Leiken on this motion for judgment on the pleadings.

### A. Run-Up to May 22, 2018

In 2015, MetroHealth hired Plaintiff Gary Brack, a registered nurse and medical-services administrator with 20 years' experience, to manage its nursing operations for Cuyahoga County. (ECF No. 30, ¶¶ 34, 35, PageID #187.) In 2017, MetroHealth promoted Mr. Brack to interim director of ambulatory care for the Cuyahoga County jail. (*Id.*, ¶ 35.) In this capacity, Mr. Brack had responsibility for managing nursing services at the jail and all that entailed. (*Id.*, ¶ 36.)

On April 18, 2018, the amended complaint alleges that the County's budget director warned the County Executive, Mr. Leiken, and the County's fiscal director in an email of "a critical situation in the County Jail regarding nurses." (*Id.*, ¶ 5, PageID #182.) Specifically, she alerted them that "[t]he jail is rated for approximately 1,700—it is overcrowded, prisoners are sleeping on mats on the floor, and our population is disproportionately unhealthy. A shortage of nurses creates risk." (*Id.*) Mr. Leiken responded to the email by thanking the budget director for the "heads up." (*Id.*)

By May 2018, according to the amended complaint, healthcare at the County jail was in a state of crisis. (*Id.*, ¶ 57, PageID #192.) Allegedly, Ken Mills, the County's Director of Corrections, blocked the hiring of nurses until the staffing situation reached a critical point. (*Id.*) Mr. Mills made a "mission-critical request" of County Council for additional nurse staffing. (*Id.*) This request prompted the Council's Public Safety Committee to hold a hearing to inquire of Mr. Mills and MetroHealth how matters had reached this point. (*Id.*)

MetroHealth designated its medical director, Dr. Thomas Tallman, to speak for the hospital. (*Id.*, ¶ 58.) Because he could not attend due to a conflict, Dr. Tallman worked with Mr. Brack to prepare testimony for the Council's Public Safety Committee. (*Id.*) The night before the hearing, the two men sent an outline of planned remarks to Jane Platten, MetroHealth's chief of staff. (*Id.*) According to the amended complaint, the chief of staff instructed Mr. Brack not to criticize the County in his remarks and not to speak without her advance permission. (*Id.*, ¶ 59.)

### B.     The Hearing of the County Council's Public Safety Committee

On May 22, 2018, the Public Safety Committee held a public hearing, which the amended complaint describes as follows. (*See generally id.*, ¶¶ 63–71, PageID #192–94.) Mr. Mills allegedly denied involvement in issues relating to the hiring of nurses and blamed staffing shortages on fiscal problems. (*Id.*, ¶ 63, PageID #192–93.) When the Chair of the Committee asked why the staffing issues at the jail had arisen, Mr. Mills allegedly demurred. (*Id.*, ¶ 65, PageID #193.) Not accepting this response, the Chair pressed the point and said, "If you're not willing to answer that's fine because I'll find out." (*Id.*) Noting Dr. Tallman's absence, the Chair wanted to hear from someone with direct knowledge. (*Id.*)

According to the amended complaint, the Chair then directly asked Mr. Brack about staffing issues. (*Id.*, ¶ 67, PageID #194.) Mr. Brack responded that Mr. Mills had obstructed hiring and that working relationships were not good. (*Id.*) In response to follow-up questions from the Chair, Mr. Brack acknowledged that financial issues were important, but not the entirety of the problem. (*Id.*) Additionally, another member of County Council asked Mr. Brack to address

3

relations with Mr. Mills on operations and security. (*Id.*, ¶ 70.) In response, Mr. Brack characterized Mr. Mills' role as "problematic" and explained that Mr. Mills "exercised improper authority over medical services that compromised health and safety at the jail." (*Id.*) In doing so, Mr. Brack provided his "personal opinion" about Mr. Mills' "level of disrespect" for the sheriff, who had contractual responsibility for MetroHealth's provision of medical services at the jail. (*Id.*; *see also id.*, ¶¶ 13 & 69.)

Allegedly, MetroHealth's chief of staff repeatedly interjected in these proceedings to minimize the role of Mr. Mills. (*Id.*, ¶ 69.) Further, the amended complaint alleges that the chief of staff took on the role of speaking for MetroHealth at the hearing and that she had assigned Mr. Brack a secondary role to help with questions relating to issues touching on technical operations at the jail. (*Id.*, ¶ 60.)

C. **Events Following the Hearing on May 22, 2018**

On the day after the hearing, the County Executive and Mr. Leiken drove to MetroHealth for an in-person meeting about Mr. Brack, according to the amended complaint. (*Id.*, ¶ 72, PageID #195.) There, they met with MetroHealth's chief executive officer and chief of staff and demanded Mr. Brack's termination. (*Id.*) In an email on May 25, 2018 to the County Executive, copying Mr. Leiken and others, the amended complaint avers that MetroHealth's chief executive officer wrote: "As per your request for MetroHealth to immediately remove our Nurse Supervisor employee from the jail clinic, we have made the adjustment to our staffing model and as of May 28, 2018 the employee will no longer provide services at the jail clinic." (*Id.*, ¶ 73; ECF No. 30-2, PageID #230.) That same day, the amended complaint alleges

4

that Mr. Brack was placed on administrative leave. (ECF No. 30, ¶ 74.) MetroHealth formally terminated Mr. Brack by letter dated August 29, 2018. (*Id.*, ¶ 92.)

## STATEMENT OF THE CASE

Based on these alleged facts, Plaintiff asserts twelve claims altogether, eight against Mr. Leiken. These claims against Mr. Leiken fall into three or four groups, depending on how one counts. Two allege causes of action under Section 1983 for conspiracy to violate civil rights (Claim 1) and First Amendment retaliation (Claim 2). All but one of the rest assert claims for civil liability for various criminal acts—interfering with civil rights, complicity, and obstructing official business— under Ohio law (Claims 6 through 9). Two assert civil liability for various criminal acts—retaliation and complicity—in the alternative (Claims 10 and 11). Finally, also in the alternative, Plaintiff alleges civil conspiracy to terminate Mr. Brack wrongfully (Claim 12). Plaintiff dismissed his claims against Mr. Leiken in his official capacity. (ECF No. 39; ECF No. 40.) Therefore, Plaintiff asserts each of the foregoing claims against Mr. Leiken in his individual capacity. Mr. Leiken moves for judgment on the pleadings on each of the State claims Plaintiff asserts against him.

## ANALYSIS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings essentially constitutes a delayed motion under Rule 12(b)(6) and is evaluated under the same standard. *See, e.g.*, *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021); *Holland v. FCA US LLC*, 656 F. App'x 232, 236 (6th Cir. 2016). Under that standard, a complaint must "contain sufficient factual

5

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "states a claim for relief that is plausible, when measured against the elements" of the cause of action asserted. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). To meet Rule 8's pleading standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To state a claim, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555.

In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to the plaintiff, accepts the allegations of the complaint as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). In reviewing a motion to dismiss, the Court distinguishes between "well-pled factual allegations," which it must treat as true, and "naked assertions," which it need not. *Iqbal*, 556 U.S. at 628 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (cleaned up). Nor does a court accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

6

Against the backdrop of this familiar standard, the Court turns to the arguments Mr. Leiken makes for judgment on the claims asserted against him.

I. **Statute of Limitations (Claims 6 through 11)**

At the outset, Mr. Leiken moves for judgment on the pleadings on Plaintiff's claims under State law based on the statute of limitations. Counts 6 through 12 assert claims for civil liability for various criminal acts under Section 2307.60 of the Ohio Revised Code. As a procedural matter, the law of this Circuit recognizes that a motion for judgment on the pleadings may dispose of a case where the statute of limitations provides an effective bar against a plaintiff's claims. *Filer v. Polston*, 886 F. Supp. 2d 790, 794 (S.D. Ohio 2012) (quoting *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)). The parties dispute whether the statute of limitations for claims under this statute is one year or six years.

I.A. **Remedial or Penal**

Section 2307.60 provides that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action." Ohio Rev. Code § 2307.60(A)(1). If authorized by law, the statute permits recovery of costs, attorneys' fees, and punitive damages. *Id.* Additionally, the text of the statute makes clear that it authorizes recovery in tort. *See id.* § 2307.60(B)(1)(a).

The statute does not contain a limitations period of its own, nor has the Ohio Supreme Court addressed the issue—leaving the parties to argue for application of others based on competing authorities. Mr. Leiken maintains that the one-year period of Section 2305.11(A) applies. That statute, titled "Time limitations for bringing certain actions," provides in relevant part: "an action upon a statute for a

7

penalty or forfeiture shall be commenced within one year after the cause of action accrued." Ohio Rev. Code § 2305.11(A). Plaintiff instead looks to the six-year statute of limitations in Section 2305.07, which applies to "a liability created by statute other than a forfeiture or penalty." Ohio Rev. Code § 2305.07.

### I.A.1. *Rosette*

Relying on *Rosette v. Countrywide Home Loans, Inc.*, 105 Ohio St. 3d 296, 2005-Ohio-1736, 825 N.E.2d 599, Plaintiff maintains the Ohio Supreme Court would apply a six-year limitations period. There, the Ohio Supreme Court reversed a lower court's judgment that applied the one-year statute of limitations of Section 2305.11(A) to a fixed statutory penalty for the late recording of a mortgage satisfaction. In addition to the statutory penalty, the statute at issue in *Rosette* (Section 5301.36(C)) allowed for the recovery of damages, making the statute look penal rather than remedial. Looking past the statute's substantive effect the Ohio Supreme Court, with three Justices dissenting, nonetheless relied on the text of Section 5301.36(C) which describes the statutory penalty as "damages." *Id.* at ¶ 13. Although the Court has doubts about the continuing iability of *Rosette*, the Ohio Supreme Court has not overruled it.

### I.A.2. Other Authorities

Mr. Leiken cites numerous authorities from State and federal courts applying a one-year limitations period. Both the Northern District of Ohio and Southern District of Ohio apply a one-year statute of limitations to claims under Section 2307.60. *See, e.g., Duffey v. Pope*, No. 2:11-cv-16, 2012 WL 4442753, at *7, 2012 U.S. Dist. LEXIS 137471, at *32–34 (S.D. Ohio Sept. 25, 2012); *Roarty-Nugent*

*v. Cuyahoga Cnty.*, No. 1:20 CV 1025, 2020 WL 5530354, at *6, 2020 U.S. Dist. LEXIS 168934, at *18 (N.D. Ohio Sept. 15, 2020); *Marquardt v. Carlton*, No. 1:18 CV 333, 2019 WL 1491966, at *2, 2019 U.S. Dist. LEXIS 58402, at *6–7 (N.D. Ohio Apr. 2, 2019), *rev'd on other grounds*, 971 F.3d 546, 547 (6th Cir. 2020). These rulings rely on various State court decisions, which also agree that the statute of limitations is one year. *See, e.g.*, *Steinbrick v. Cleveland Elec. Illuminating Co.*, No. 66035, 1994 Ohio App. LEXIS 3756, at *5 (Ohio Ct. App. Aug. 25, 1994) ("R.C. 2307.60 contemplates a penalty."); *Hirsi v. Davis Creek Auto Sales*, No. 13CV-7271, 2014 Ohio Misc. LEXIS 24652, at *15 (Sept. 29, 2014) (Franklin County Court of Common Pleas).

### I.B. Injury Not Arising on Contract

Alternatively, Plaintiff argues for the four-year limitations period available under Section 2305.09 as a species of tort liability. That statute establishes a four-year limitations period for actions alleging "an injury to the rights of the plaintiff not arising on contract" or enumerated in certain statutes not relevant here. Ohio Rev. Code § 2305.09(D). Mr. Leiken points out that no court has applied a four-year limitations period to Section 2307.60. To the contrary, *Steinbrick* rejected application of Section 2305.09's limitations period to a claim under Section 2307.60. 1994 Ohio App. LEXIS 3756, at *5.

### I.C. Prediction

When interpreting a State statute, the Court must follow State interpretations of the statute and predict how the State's highest court would rule where, as here, it has not done so. *Bevan & Assocs., LPA, Inc. v. Yost*, 929 F.3d 366, 374 (6th Cir. 2019).

9

Every court that has considered the issue, State or federal, applies a one-year limitations period to claims under Section 2307.60. Plaintiff cites no case casting doubt on this conclusion, and the Court's research has not located any. Based on these longstanding, uniform rulings, the Court is hard pressed to reach any other conclusion.

Plaintiff's arguments have considerable force, however, and on a blank slate might well carry the day. On its face, Section 2307.60(A)(1) creates a cause of action for the victim of a crime to "recover full damages," suggesting the statute is not penal. To be sure, some parts of the statute allow for recovery of amounts that are penal in nature, such as punitive damages or attorneys' fees. But it is difficult to see why such language, subsidiary to the statute's authorization of a civil action to recover damages, would make it penal in nature as a whole.

In this regard, *Rosette* may provide a rough analogy by virtue of its reliance on the statutory text and relying on the word "damages" in the statute. Even if *Rosette* does not remain good law or, as Mr. Leiken argues, is limited to its facts and has no application here, the substantive force of Section 2307.60 suggests a different limitations period should apply. In *Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 12, the Ohio Supreme Court held that Section 2307.60 creates "a civil cause of action for damages." That holding does not sound like characterizing the statute as penal in nature. Rather, the statute provides crime victims with a civil recovery when they experience an injury to person or property.

That statutory aim also suggests a longer limitations period. Actions for injuries to person or property generally, though not always, have longer limitations periods. Personal injury claims, for example, have a two-year limitations period. Ohio Rev. Code § 2305.10(A). And the general statute of limitations for felonies is six years. *Id.* § 2901.13(A)(1)(a).

Yet Ohio's lower courts continue to apply a one-year limitations period, even after the Ohio Supreme Court's ruling in *Jacobson*. *See, e.g.*, *Ettayem v. H.E.R., LLC*, 5th Dist. Delaware No. 19 CAE 12 0070, 2020-Ohio-4647, ¶ 24, 26 (affirming and adopting judgment of Delaware County Court of Common Pleas). So have the federal courts. *See, e.g.*, *Marquardt v. Carlton*, No. 1:18 CV 333, 2019 WL 1491966, at *3 (N.D. Ohio Apr. 2, 2019). Contrary to Plaintiff's argument, not all State or federal decisions reach this conclusion through unreasoned application of decisions superseded by the Ohio Supreme Court's decision in *Jacobson*. *See, e.g.*, *id.*; *Duffey*, 2012 WL 2012 4442753, at *7, 2012 U.S. Dist. LEXIS 137471, at *32–33 (analyzing various State and federal authorities to determine one-year limitations period applies). Based on the uniform authority in the State and federal courts that have considered the issue, the Court predicts the Ohio Supreme Court would determine that a one-year statute of limitations applies to claims under Section 2307.60.

**I.D. Application**

Applying a one-year statute of limitations to Claims 6 through 11, Plaintiff filed suit on May 21, 2019. (ECF No. 1-1.) That complaint did not assert claims against Mr. Leiken. Plaintiff brought claims against Mr. Leiken in the amended complaint, filed on February 26, 2020. (ECF No. 30.) Because Mr. Brack was

11

terminated on August 29, 2018, Counts 6 through 11 assert claims outside the one-year limitations period of Section 2307.60. Nor does Plaintiff make any argument that the claims against Mr. Leiken asserted in the amended complaint would relate back to filing of the original complaint. Therefore, these claims are time barred.

### I.E. Certification

Finally, Plaintiff argues that, "[i]f the Court considers the statute-of-limitations question to be ambiguous, the Court could certify the question to the Ohio Supreme Court." (ECF No. 54, PageID #381.) The Court declines to certify the question for three reasons. First, because no Court has determined that anything other than a one-year limitations period applies under the statute, the Court does not consider the question ambiguous. Just because there are plausible, and even reasonable, interpretations for different periods does not make the question ambiguous. Second, Mr. Leiken's motion has remained pending for a long time, and the Court has serious concern about certification that would result in further delay, particularly where the courts that have considered the question have reached the same conclusion.

Third, under the Ohio Supreme Court's rules, certification of a question from a federal court requires a "finding there is a question of Ohio law that may be determinative of the proceeding." S. Ct. Prac. R. 9.01(A). The Court cannot make such a finding. At most, the applicable limitations period affects a few claims against Mr. Leiken. Its resolution will not determine the whole proceeding against all Defendants or even against Mr. Leiken specifically. Accordingly, the Court declines to certify the question to the Ohio Supreme Court.

## II. Civil Conspiracy for Wrongful Termination (Claim 12)

In Claim 12, pled in the alternative, Plaintiff alleges that Mr. Leiken maliciously worked with the County Executive, Mr. Mills, the County, and MetroHealth to effect Mr. Brack's wrongful termination in violation of public policy. (ECF No. 30, ¶ 180, PageID #214.) In opposing judgment on the pleadings, Plaintiff did not respond to Mr. Leiken's motion on this claim. Therefore, he has abandoned the claim as to Mr. Leiken. *See Humphrey v. United States Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Mr. Leiken's motion for judgment on the pleadings with respect to Claims 6 through 12 of the amended complaint asserted against him. Claims 1 and 2 remain pending against Mr. Leiken.

**SO ORDERED.**

Dated: May 17, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio