# EXHIBIT G

AGREEMENT BETWEEN
CUYAHOGA COUNTY, OHIO ON BEHALF OF THE COUNTY SHERIFF'S
DEPARTMENT
AND
THE METROHEALTH SYSTEM
FOR PROVISION OF MANAGEMENT, HEALTHCARE AND RELATED SERVICES

This Agreement is entered into effective January 1, 2015, by and between Cuyahoga County on behalf of the Cuyahoga County Sheriff's Department located at 1215 West 3rd Street, Cleveland, Ohio 44113 ("CCSD"), and The MetroHealth System, a county hospital organized and operated by its board of county hospital trustees under Chapter 339 of the Ohio Revised Code, located at 2500 MetroHealth Drive, Cleveland, OH 44109 ("MetroHealth").

RECITALS

1.      CCSD is responsible for operating the Cuyahoga County Corrections Center (the "Center") located at 1215 West Third Street, Cleveland, Ohio 44113.

2.      CCSD and MetroHealth are currently parties to an Agreement for Hospital Services dated November 1, 1999, as amended to date (the "Existing Agreement"), pursuant to which MetroHealth provides certain inpatient and outpatient hospital services to detainees of the Center at MetroHealth's facilities. It is the intent of the parties that such Agreement shall remain in effect for the term of this Agreement and shall not be affected hereby.

3.      CCSD requested, and MetroHealth agreed, to work towards an arrangement where MetroHealth manages the operation of the health care and related services provided at the Center and to oversee and run such health care services as an annex hospital outpatient clinic of MetroHealth located at the Center. The ultimate objective of the parties is to shift the operation of the health care services to MetroHealth in phases. CCSD and MetroHealth entered into an Agreement for Provision of Management, Healthcare and Related Services effective January 1, 2014 addressing the Initial Phase of the arrangement and a second agreement effective April 1, 2014 addressing the Second Phase in which CCSD retained the services of certain licensed professionals, including physicians, nurse practitioners, nursing pool and other professionals as mutually agreed upon by the parties (the "Licensed Professionals"), administration and technical expertise ("Professional Services") from MetroHealth described and listed in the attached Exhibit A to provide certain management, medical director ("Medical Director"), medical, mental health, and laboratory services for the Center and to CCSD detainees incarcerated at the Center (together the "MetroHealth Services").

4.      CCSD and MetroHealth now wish to continue the relationship set forth in the Second Phase of the arrangement under the terms as set forth below.

5.      CCSD will provide the space for MetroHealth to provide the MetroHealth Services as an annex hospital outpatient department clinic of MetroHealth.

6. CCSD will retain control over its own employees working at the Center. Any CCSD employees involved in the medical care provided to detainees at the Center will be hired and supervised by CCSD and the Sheriff. The Medical Director will work collaboratively with the Sheriff on the hiring and discipline of the CCSD employees in accordance with the rules and regulations applicable to CCSD and its employees, provided, however, that the CCSD policies and procedures, together with any collective bargaining agreements governing the CCSD employees, will control.

7. MetroHealth is willing and able to provide CCSD the MetroHealth Services.

NOW, THEREFORE, in consideration of the foregoing statements and the mutual promises made in this Agreement and for other valuable consideration the receipt and sufficiency of which are hereby acknowledged, MetroHealth and CCSD (herein collectively called the "Parties") agree as follows:

Section I. Term.

This Agreement shall commence on January 1, 2015 ("Effective Date") and continue until December 31, 2019 (the "Term") for fees and costs set forth herein. Either party may terminate the Agreement for any cause by providing the other party at least one hundred eighty (180) days advanced written notice of termination. The parties agree to extend the Term of the Agreement as operational needs are evaluated and costs are assessed, upon mutual written agreement of the Parties.

Section II. MetroHealth Services.

MetroHealth will provide the MetroHealth Services detailed on Exhibit A, attached hereto and incorporated herein, and as more fully set forth in this Section II, and such other services, professionals and/or equipment as mutually agreed by the parties:

A. **MetroHealth Services.** In accordance with and subject to the terms and provisions of this Agreement, MetroHealth shall provide the Licensed Professionals, administration and services to assist in the operation of the Center as detailed in Exhibit A, attached hereto and incorporated herein. Exhibit A may be amended from time to time by the mutual written agreement of the Parties. MetroHealth will provide the MetroHealth Services pursuant to this Agreement in compliance with the policies, procedures, and directions of CCSD. In the event that a Licensed Professional provided pursuant to this Agreement shall be unavailable for any reason to perform the services contemplated herein, MetroHealth will make prompt notification to CCSD. In such event, MetroHealth will make reasonable and good faith efforts to provide CCSD with a similarly licensed and/or credentialed replacement Licensed Professional qualified to perform the anticipated services in a timely manner so as not to disrupt the MetroHealth Services.

B. **Medical Director.** MetroHealth shall employ or separately contract with a Medical Director for the Center. The Medical Director shall be a licensed physician in the State of Ohio who is the responsible physician for the Center. If the Medical Director is

2

MetroHealth_000046

scheduled to be unavailable for a period of time, greater than one week, a Licensed Professional who has been provided orientation to the Center will serve in his or her place as the interim Medical Director to act in the absence of the Medical Director.

The Medical Director will provide administrative and clinical oversight of all medical services to ensure delivery of appropriate and medically necessary care. This will include, but is not limited to: full-service primary care, development of preventative and educational programs; use, updating and revising of the drug formulary; and clinical review of specialty physician consult recommendations for medical necessity and appropriateness. However, CCSD shall be responsible for the CCSD employees involved in the medical care provided to detainees at the Center. These CCSD employees will be hired and supervised by CCSD and the Sheriff. The Medical Director will work collaboratively with the Sheriff on the hiring and discipline of the CCSD employees in accordance with the rules and regulations applicable to CCSD and its employees.

C.     **Laboratory Services.** MetroHealth shall provide laboratory services as necessary for detainees' specimens (the "Laboratory Services"). MetroHealth will charge CCSD for the Laboratory Services in accordance with the attached Exhibit B. Laboratory specimens will be transported to MetroHealth for testing and results. Using a mutually agreed upon pick-up time, MetroHealth will utilize contract couriers to pick specimens up at the Center once per day, Monday through Friday, and transport them to the MetroHealth laboratory. MetroHealth will supply the once per day, Monday through Friday regular scheduled courier runs at no additional cost. Any additional courier pickups (e.g. more than once per day for STAT orders or evenings and weekends) will be made at the courier's then applicable charge and paid for by CCSD. Pick-up and delivery times will be set as mutually agreed between MetroHealth and CCSD. If a laboratory test is requested that MetroHealth does not offer, the test will be outsourced by MetroHealth and CCSD will reimburse MetroHealth the costs of the specialized laboratory test.

D.     **Equipment.** At the request of CCSD MetroHealth will purchase and supply specified equipment as set forth in Exhibit A or as mutually agreed upon by CCSD and MetroHealth ("Equipment"). CCSD shall reimburse MetroHealth for the Equipment and associated shipping costs at MetroHealth's cost. If the Equipment requires a maintenance agreement or servicing, CCSD shall pay for the costs of such maintenance agreements or costs or servicing. All Equipment for which CCSD has paid in full at the termination of the Agreement will become the property of CCSD. If the parties mutually agree, MetroHealth may purchase at fair market value any Equipment it deems useful for its own operations at its other sites of operation.

E.     **Administrative, Technical and Subject Matter Expert Project Support.** MetroHealth will provide administrative, technical, technical training and subject matter expert project support to the County and for the MetroHealth Services ("Project Support Services"). MetroHealth will track the time spent on Project Support Services and the Parties agree that the time spent on Project Support Services will be taken into consideration as the

3

MetroHealth_000047

Parties negotiate the further phases of the arrangement for MetroHealth to manage the operation of the healthcare and related services provided at the Center.

F.   **Electronic Medical Record.**   CCSD and MetroHealth implemented an electronic medical record, called EPIC, at the Center ("EPIC Implementation").   MetroHealth will continue to provide equipment and Professional Services to support the ongoing maintenance, upkeep and new desired modules for the EPIC Implementation at the Center.

G.   **Pharmaceuticals and Medical Supplies.**   MetroHealth will purchase certain medical supplies for use at the Center as mutually agreed.   CCSD and MetroHealth will analyze the potential of MetroHealth purchasing pharmaceuticals for use at the Center and whether it is appropriate to designate MetroHealth's annex hospital outpatient department clinic at the Center as one of MetroHealth's outpatient clinics for purposes of 340B eligibility.

Section III.  CCSD Responsibility and Services.

A.   CCSD and MetroHealth shall work collaboratively to improve the efficiency and quality of health care services provided at the Center and to decrease the number of off-site medical transports.

B.   With the advice of the Medical Director, CCSD shall have authority over, and shall be directly responsible for, the provision of certain technical and ancillary components of the Services, including but not limited to the CCSD nursing staff, dental, medical records, mental health staff and the pharmacy.

C.   With the advice of the Medical Director, CCSD shall ensure that it employs or contracts with nursing staff and all such other clinical support staff sufficient in number and in quality as it determines, in the sole discretion of CCSD,  is necessary to effectively operate the Center and consistent with National Commission for Correctional Health Care Standards.

D.   Other than as set forth in Section II(G), CCSD shall provide all equipment, medical supplies, pharmacologic medications, and instruments in a manner consistent with National Commission for Correctional Health Care Standards, with such enhancements or replacements as may be recommended by MetroHealth and which may be accepted by CCSD.

E.   CCSD is the sole entity responsible for the custody of detainees, which includes their physical safety and security, housing, access to medical treatment, transportation, nutrition, recreation, and education, among others. Final judgment with regard to all matters pertaining to the non-medical care and custody of detainees shall rest with CCSD. The Sheriff and the Medical Director will work collaboratively to ensure that Center's facilities meet industry standards and are adequate for the health care services provided to the detainees however MetroHealth shall have no liability therefor.

4

MetroHealth_000048

F.   CCSD and MetroHealth will jointly provide MetroHealth employees working at the Center with an orientation to the Center and to the Center's policies and procedures including training in security precautions needed to provide services in the jail environment.

G.   CCSD shall immediately report, in writing, to the Chief Risk Officer at MetroHealth and the CCSD Risk Manager any unexpected incident known to involve any MetroHealth Personnel (such as errors, unanticipated deaths or other unanticipated detainee-related events or injuries, and any safety hazards known to be related to the services provided by Licensed Professionals). The Chief Risk Officer at MetroHealth will report to the Medical Director any unexpected incident known to involve any Licensed Personnel or other MetroHealth staff (such as errors, unanticipated deaths or other unanticipated detainee-related events or injuries), and any safety hazards known to be related to the services provided by MetroHealth. Additionally the parties will establish a joint quality and risk management committee that will meet at least quarterly to address quality and risk management issues as well as to facilitate complaints and claims process management.

H.   CCSD will provide to the MetroHealth Professionals, as well as to their property and equipment, the same level of security that is provided to all CCSD employees while at the Center. MetroHealth Professionals shall adhere to any and all CCSD security standards and/or protocols. MetroHealth Professionals will be instructed and oriented to the CCSD facility such that MetroHealth Professionals will be able to complete the required employee entrance screening and will not be unduly delayed in starting their shift at the Center.

I.   CCSD agrees to make reasonable parking accommodations available to MetroHealth Professionals to allow for efficient access to the Center; provided, however, that the MetroHealth Professionals may incur a fee for such parking accommodations.

J.   CCSD will provide access to detainees sufficient to permit Licensed Professionals to deliver safe and effective health services in a manner that complies with applicable accreditation and regulatory standards.

K.   CCSD will provide adequate space within the Center for MetroHealth personnel to provide the administrative portion of the Services and for Licensed Professionals to provide healthcare and mental health services necessary in the furtherance of the assigned duties and responsibilities of the Licensed Professionals.

L.   CCSD will provide special medical diets for detainees for whom such special diets are medically necessary as ordered by Licensed Professional.

M.   CCSD will provide adequate hygiene supplies for detainees as necessary, and in compliance with CCSD policy and security regulations and consistent with National Commission for Correctional Health Care standards. CCSD shall operate the Center in

5

MetroHealth_000049

accordance with all applicable laws and regulations and in compliance with the American Correctional Association standards.

Section IV.  Non-exclusivity.

A.     Nothing in this Agreement contemplates an exclusive arrangement.

B.     MetroHealth, at its sole discretion, may direct a Licensed Professional or other MetroHealth employee performing Services ("MetroHealth Professionals") to devote all or part of the MetroHealth Professional's committed time to MetroHealth that is not committed to CCSD under this Agreement to other MetroHealth business. MetroHealth will make commercially reasonable efforts to minimize turnover of Licensed Professionals provided to CCSD.

C.     A MetroHealth Professional, at his or her sole discretion, may devote to any other pursuit any professional time not committed to MetroHealth, and not committed to CCSD under this Agreement.

Section V.  MetroHealth's Responsibilities With Regards to MetroHealth Professionals.

A.     MetroHealth agrees to make available the services of the MetroHealth Professionals described in Exhibit A. Some services of the Licensed Professionals may be provided via telemedicine. Some services of the administrative personnel may be provided remotely. The parties further agree that the number of Licensed Professionals provided by MetroHealth as set forth in Exhibit A may be adjusted from time-to-time as necessary and appropriate by mutual written agreement of CCSD and MetroHealth.

B.     MetroHealth shall take all steps necessary and sufficient for the MetroHealth Professionals to be bound by the terms and conditions of this Agreement.

C.     MetroHealth shall cause MetroHealth Professionals to render and provide the MetroHealth Services under this Agreement in a competent, efficient and satisfactory manner, in accordance with generally accepted correctional medicine standards applicable to the MetroHealth Professional's profession, in accordance with all CCSD policies and procedures and in accordance with all applicable MetroHealth policies and procedures. MetroHealth shall assist CCSD with obtaining recertification through the National Center for Correctional Health Care. All MetroHealth Professionals are expected to collaborate with the CCSD Utilization Management program to ensure that medically necessary care is provided.

D.     MetroHealth agrees to respect and abide by all Federal, State and local laws, rules, and regulations, including those pertaining to confidentiality and disclosure with regard to all information and records obtained or reviewed in the course of providing services to CCSD and/or its detainees and cause MetroHealth Professionals to do the same.

MetroHealth_000050

E.     MetroHealth acknowledges that certain positions will continue to be staffed by CCSD during the term of this Agreement.  MetroHealth agrees to work collaboratively with CCSD staff to ensure that duplicative services are not being ordered.  MetroHealth agrees to work with CCSD to ensure that the terms of any and all collective bargaining agreements governing any CCSD staff at the Center are not breached.

Section VI.  <u>CCSD's Responsibilities With Regards to the Services.</u>

A.     CCSD shall compensate MetroHealth for the MetroHealth Services listed in Section II of this Agreement, and for the costs associated with Professional Liability Insurance and the Self Insured Retention and/or Deductible and related costs set forth in Section X of this Agreement in accordance with the terms set forth in Section VII.

B.     CCSD, in collaboration with MetroHealth, will provide each MetroHealth Professional with orientation, guidance and assistance necessary to enable the MetroHealth Professional to fulfill their duties and obligations under this Agreement in a competent, efficient and satisfactory manner in accordance with generally accepted correctional medicine standards and in accordance with all CCSD policies and procedures.

C.     CCSD agrees to respect and abide by all Federal, State and local laws, rules, and shall not cause or encourage MetroHealth Professionals to act in any violation of the same.

D.     CCSD agrees to respect and abide by all Federal, State and local laws, rules, and regulations, including those pertaining to confidentiality and disclosure as set forth in the Health Insurance Portability and Accountability Act of 1996 and rules promulgated thereunder (as amended from time to time, "HIPAA") and the American Recovery and Reinvestment Act of 2009 and rules promulgated thereunder (as amended from time to time, "ARRA") when applicable.  CCSD will cause its employees and contractors to do the same.

E.     CCSD, with the assistance of MetroHealth, shall be responsible for all internal credentialing and privileging necessary and applicable to the Licensed Professional's practice on CCSD's premises.

F.     CCSD shall provide all physical facility infrastructure needed in a timely manner for MetroHealth to meet agreed upon timeframes for EPIC Implementation and for the delivery and operation of medical Equipment for use at the Center.  Additionally, CCSD shall ensure the physical facilities are able to appropriately house all new equipment and that the new equipment is able to interface with EPIC and meet regulatory healthcare standards (for example Coumadin machine interface and blood draws interface).

Section VII.  <u>Fees; Payment Terms; Performance Incentive Payment.</u>

A.     CCSD will pay MetroHealth fees for the MetroHealth Services provided by the MetroHealth Professionals at the rates described and listed in this Agreement and/or in Exhibit A in an amount not to exceed $18,845,022.45 during the Term of the Agreement.

7

MetroHealth_000051

Exhibit A contains the projection for the first year of the term and shall be amended as agreed upon by the parties from time to time.

All of the CCSD's obligations under this Agreement are contingent upon the County Council's appropriating the funds on an annual basis necessary for the continuation of this Agreement in any Agreement year. In the event the funds necessary for the continuation of this Agreement are not appropriated or approved, CCSD will notify MetroHealth of such occurrence in writing. This Agreement shall thereafter terminate and be rendered null and void on the last day of the last fiscal period for which appropriations were made.

B. MetroHealth shall submit a complete monthly invoice with a detailed itemization of all services rendered, and other cost incurred relating to the provision of the MetroHealth Services to CCSD for the accrued fees, and payment shall be due within forty-five (45) days of CCSD's receipt of the complete monthly invoice.

C. Payments not received within forty-five (45) days from the applicable due date will accumulate interest at the rate of one and one-half percent (1.5%) per month on the unpaid balance, equating to an annual percentage rate of eighteen percent (18%) or the maximum rate permitted by applicable law, whichever is less.

D. The Parties acknowledge that MetroHealth is expending resources beyond what it will be paid for under the fees set forth above to plan for and implement and manage the operation of the MetroHealth Services at the Center. To partially compensate MetroHealth for those costs and to allow the parties to share in the potential savings this arrangement provides CCSD, the parties shall work in good faith to determine the shared savings measures and enter into a shared savings agreement regarding the measures and MetroHealth's eligibility for shared savings by July 1, 2015. The shared savings agreement shall be revised annually thereafter by the parties. Likewise, MetroHealth agrees that, within the bounds of regulatory requirements, it shall work in good faith to make the MetroHealth annex hospital outpatient department clinic at the Center eligible to participate in the 340B drug pricing program on or before July 1, 2015.

Section VIII. Certifications. Representations, Warranties.

A. MetroHealth represents and warrants that:

(1) Each Licensed Professional is qualified and carries all required and applicable state and Federal licenses to practice;

(2) Each Licensed Professional's license to practice has never been suspended or revoked, and Licensed Professional has not received any other sanctions from any licensing board, specialty board, or applicable state or local professional society; has not been denied membership or re-appointment to any applicable professional staff, and Licensed Professionals applicable practice privileges have never been suspended, curtailed, or revoked.

8

(3)     Each Licensed Professional shall provide care to detainees in a manner consistent with National Commission for Correctional Health Care Standards and their own applicable professional standards, and MetroHealth will use its best efforts to avoid unnecessary care, including, without limitation, unnecessary off-site medical transports.

(4)     All costs and fees invoiced to CCSD by MetroHealth represent the actual cost incurred by MetroHealth, do not include any mark up or profit and are consistent with costs incurred by MetroHealth for similar goods and services on its own behalf.  Upon the request of CCSD, MetroHealth will provide to CCSD a detailed report and cost breakdown of costs and fees invoiced to CCSD.

B.     Each party certifies and warrants, to the best of the party's knowledge, the following with regard to itself, its employees, and its agents (each an "Individual"):

(1)     No Individual is on any state or federal anti-terror or other exclusion lists or involved in any related investigations;

(2)     No Individual has any undisclosed interest in the Agreement that would constitute a conflict of interest or other violation of Ohio or federal ethics laws and rules; and,

(3)     No Individual has any criminal background or record that would bar the Individual from performing the Individual's obligations under the Agreement.

Section IX. Non-Solicitation.

Each party recognizes that the other party incurs significant costs in recruiting and training its professionals, including MetroHealth Professionals, and will suffer a considerable economic loss if the other party directly recruits any of its professionals.  Therefore, the parties agree that during the term of this Agreement, and for the twelve (12) month period following termination of this Agreement, neither party nor an affiliate shall, either directly or indirectly, employ or attempt to employ any employee of the other party who is affiliated with delivery of the MetroHealth Services, or otherwise solicit, induce, cause or facilitate any employee of the other party who is affiliated with delivery of the MetroHealth Services to terminate his or her employment with such employer, without the written consent of the other party after reasonable notice. If either party or an affiliate (each a "Recruiting Party") directly recruits and engages any employee during any active term of this Agreement or within one (1) calendar year thereafter, then at the discretion of the other party, the Recruiting Party agrees to pay to the other party a recruiting fee in the amount of forty per cent (40%) of such employee's then annual base salary, not including fringe, incentive and other benefits, to defray the other party's costs of recruiting a replacement for such employee.

Section X. Insurance and Releases.

A.     CCSD shall retain liability for all acts and omissions by all CCSD employees or agents providing medical care to the detainees of the Center.

9

B.  MetroHealth shall purchase and retain professional and general liability insurance coverage (the "Professional/General Liability Insurance") for its employees and CCSD employees providing the MetroHealth Services at the Center. MetroHealth shall invoice CCSD monthly for the costs of the Professional/General Liability Insurance. The parties both understand that the Professional/General Liability Insurance contains a self-insured retention and/or deductible amount not to exceed $25,000 per claim (the "Self Insured Retention/Deductible Limit").

CCSD is responsible for all costs incurred by MetroHealth for the Professional/General Liability Insurance and claims handling, and will hold MetroHealth harmless for any payments within the Self Insured Retention/Deductible Limit as well as all associated loss expenses, including but not limited to outside attorney fees, deposition and expert witness fees, record copying fees and court costs if applicable ("Defense Costs"). MetroHealth will have no liability for same.

MetroHealth and CCSD agree that the Professional/General Liability Insurance purchased is a combined policy covering all MetroHealth and CCSD personnel providing healthcare services at the Center. The type and scope of the insurance coverage included in the policy shall remain the same as the insurance coverage obtained by MetroHealth under the prior Agreement dated April 1, 2014 between MetroHealth and CCSD. The Parties agree that they will work together to obtain the lowest rate for the Professional/General Liability Insurance and that they shall obtain the policy with the most appropriate coverage at the lowest rate. After the first year of this Agreement the Professional/General Liability Insurance may be purchased by either MetroHealth or CCSD as mutually agreed to enable the Parties to obtain the lowest rate. The Parties agree to re-evaluate the insurance needs and responsibilities of the Parties from time to time throughout the future phases of the arrangement for MetroHealth to manage the operation of the healthcare and related services provided at the Center.

At the termination of this Agreement or any renewal thereof, CCSD shall remain liable for any professional or general liability claims and associated loss expense within the Self Insured Retention Limit and Defense Costs that are incurred but not reported relating to the acts or omissions of MetroHealth Professionals, including but not limited to medical care and treatment rendered at the Center. Additionally CCSD will be responsible for all costs associated with the purchase of appropriate extended reporting endorsements ("Tail Coverage") and MetroHealth will have no liability for same. Upon request, MetroHealth will provide CCSD with documents or certificates of insurance evidencing the coverage required under this section and providing for not less than thirty (30) days notice to CCSD of the cancellation of such insurance. MetroHealth shall not cancel, reduce or change the insurance coverage without the prior written consent of CCSD and MetroHealth will promptly notify CCSD of any cancellation, reduction, or other material change in the amount or scope of any coverage required under this section.

C.  To the extent permitted by Ohio law, CCSD shall release and hold MetroHealth harmless from any and all claims or liabilities incurred as a result of the clinical negligence or malpractice of CCSD or of any employee or agent of CCSD occurring in the context of

10

MetroHealth_000054

rendering care to the detainees in the Center. As a condition precedent, MetroHealth shall give CCSD written notice of any such claim and of MetroHealth's intent to seek a release as soon as practicable after such claim becomes evident.

D.    To the extent permitted by Ohio law, CCSD shall also release MetroHealth and hold it harmless from any and all claims or liabilities incurred as a result of the non-medical negligence of CCSD or any of its employees or agents occurring in the context of CCSD providing services to detainees under this Agreement.

<u>Section XI.  Termination.</u>

A.    In the event that either party determines it necessary to terminate this Agreement on the basis of an alleged material breach or material default by the other party, the parties agree to utilize good faith efforts to amicably resolve such dispute. In the event that an amicable resolution is not reached within fifty (50) days from date the written notice alleging material breach is given, the parties shall try in good faith to settle the dispute by mediation administered by the American Arbitration Association before resorting to arbitration, litigation or any and all remedies available at law and equity.

B.    Notwithstanding the foregoing, or any other provision herein to the contrary, either party may at its discretion either immediately suspend all pending and future obligations under this Agreement, or in the alternative, immediately terminate this Agreement, upon the occurrence of any of the following:

(1)    The other party's breach of its representations and warranties under Section VIII above;

(2)    The other party's failure of to maintain and/or provide insurance required under Section X above;

(3)    The insolvency or bankruptcy of either party, or cessation of operations or assignment of assets for the benefit of creditors by either party; or

(4)    CCSD's failure to pay MetroHealth for the MetroHealth Services in a timely manner as set forth in this Agreement.

Section XII.  <u>Relationship of the Parties.</u>

A.    The relationship between MetroHealth and CCSD shall be that of independent contractors.

B.    Neither Party shall have any duty or obligation to:

(1)    Withhold and/or pay any federal, state or local taxes or Workers' or Unemployment Compensation Contributions or to comply with any other employment laws regarding the other Party's employees; or

11

(2)    Provide employee fringe or other benefits to the other Party's employees or agents.

C.    Each Party shall satisfy all duties or obligations under federal, state or local law applicable to its relationship with its own employees.

D.    Each Party shall be solely responsible for the payment to or on behalf of its own employees of all distributions, wages and salaries, taxes, withholding payments, penalties, fees, professional education and seminar expenses, professional liability insurance premiums, contributions to insurance and pension or other deferred compensation plans (including, but not limited to, workers' compensation and social security contributions, licensing and registration fees), additional benefits of any type, and the filing of all necessary documents, forms and returns pertinent to all of the foregoing.

E.    Neither Party shall make any claim that the other Party is responsible for the payment or filing of any of the foregoing payments, withholdings, contributions, taxes, documents and returns, including but not limited to, Social Security contributions and employer income tax withholding obligations.

F.    Each Licensed Professional is, and at all times during any active term of this Agreement, shall remain an employee of MetroHealth. However, and notwithstanding anything else to the contrary in this section, during, and for the purposes of, the services provided by the Licensed Professional to CCSD and its detainees within the scope of this agreement, CCSD may exercise such control over each Licensed Professional as is either required by law, or is usual, customary, and incidental to any credentials or privileges granted by CCSD to the Licensed Professional.

Section XIII.    Audit Rights.

CCSD and its authorized representative shall have the right, at any time, but not more than once per year, to audit, to examine and to make copies of or extracts from all books and records of MetroHealth as they may relate to the MetroHealth Services and the performance of this Agreement (in whatever form they may be kept, whether written, electronic or otherwise). MetroHealth shall maintain complete and accurate records of the services performed under this Agreement at all times. Upon fifteen (15) days' written notice, MetroHealth shall provide CCSD or its representative reasonable access to MetroHealth's records to verify their accuracy and conformance to the terms of this Agreement. CCSD shall be permitted to conduct these audits with any or all of its own internal resources or through the use of a third party accounting/auditing firm, in CCSD's sole discretion. Any overpricing or overcharges made by MetroHealth to CCSD shall be credited to CCSD. If the audit demonstrates overpricing or overcharges, CCSD shall notify MetroHealth in writing and the Parties agree to meet and confer in good faith to discuss the results of such review within thirty (30) days of the date notice is given. If CCSD does not demonstrate to MetroHealth's satisfaction that there has been overpricing or overcharging, the Parties will mutually identify and select an independent

12

accounting firm or consultant, with experience and expertise in health care (the "Reviewer") to perform an audit and generate a report regarding the pricing. If the parties cannot agree on a Reviewer then each Party shall select one independent reviewer and these two independent reviewers shall collectively select an independent reviewer to serve as the Reviewer. The Reviewer shall have sixty (60) days to complete the review and issue a report. The Reviewer will determine whether there has been any overpricing or overcharging. The report of the Reviewer will be final and binding on the Parties. Any initial audit shall be conducted at the sole cost of CCSD, except that in the event the audit identifies overpricing or overcharges in excess of five percent (5%) of the total amount billed under this Agreement MetroHealth shall bear the cost of the audit. Should a Reviewer be engaged jointly by the Parties pursuant to the procedure set forth above, the Parties will share in the costs for the engagement of the Reviewer. Any audit must be performed no later than twelve (12) months from the date of the services subject to the audit.

MetroHealth and its authorized representatives shall have the right, at any time to audit CCSD's employees or contractor's use and access to the electronic medical record (EPIC) to ensure compliance with HIPAA and all applicable laws and regulations. If MetroHealth through an audit or otherwise determines that a CCSD employee or contractor has violated HIPAA or MetroHealth's policies regarding the use of EPIC, CCSD agrees to promptly take such disciplinary action as is mutually agreed upon between CCSD and MetroHealth.

Section XIV. No Advertisement.

Neither Party will, without the prior written consent of the other Party, use in advertising, publicity, or otherwise, the name, trademark, logo, symbol or other image of the Party or that Party's employee or agent, except as required for regulatory filing purposes or as otherwise permitted by this Agreement.

Section XV. Confidentiality and Intellectual Property Rights.

Each Party expressly agrees that, to the extent not generally known to the public, patient lists, policies and procedures, business or clinical practices, manuals, protocols, marketing and promotional materials, contracts, agreements with third party payors, and information regarding employees of the other Party (collectively "Proprietary Information") shall be maintained by each Party in strictest confidence. During the term of this Agreement and at all times thereafter, no Proprietary Information shall be copied or provided to any third party, excluding counsel or other professional consultants, without the prior written approval of the other Party. Upon termination or expiration of this Agreement, each Party shall return to the other Party copies in its possession of all such Proprietary Information relating to the other party. Each party shall retain sole ownership of its own protocols, skills, designs, interfaces, processes, procedures, formulas, protocols, designs, plans, trade secrets, know how, residuals and ideas that are used in the performance of the services under this Agreement which were developed prior to or during this Agreement.

All original documentation prepared jointly by the Parties specifically in support of the Services shall be deemed to be jointly owned by MetroHealth and CCSD and each Party shall have a

13

royalty free license to use such documentation consistent with the law, including the Health Insurance Portability and Accountability Act of 1996 and amendments thereto ("HIPAA").

Section XVI.  Controlling Laws; Severability of Provisions; Jurisdiction; Dispute Resolution.

A.     This Agreement is signed, executed and consummated in the State of Ohio, and Ohio's laws shall govern all disputes, controversies, and litigation arising hereunder. MetroHealth and CCSD hereby agree that proper venue for all disputes, controversies and litigation arising under this Agreement lies exclusively with the Courts of Ohio. For all disputes, controversies and litigation arising under this Agreement, MetroHealth and CCSD hereby (jointly and individually) submit to the personal jurisdiction of the Ohio Courts.

B.     If any provision herein is subsequently determined to be illegal or otherwise unenforceable, all other provisions hereof shall remain in full force and effect and fully enforceable notwithstanding such determination of partial illegality or unenforceability.

Section XVII.  Notice.

Notice shall be deemed to have been given when delivered or upon receipt when mailed by Certified Mail, Return Receipt Requested to the applicable Party at the address(es) shown below:

> **To MetroHealth:**
> The MetroHealth System
> Akram Boutros, M.D., FACHE, President and CEO
> 2500 MetroHealth Drive
> Cleveland, OH 44109
>
> With Copy to:
> The MetroHealth System
> Chief Legal Officer
> 2500 MetroHealth Drive
> Cleveland, OH 44109
>
> **To CCSD:**
> Cuyahoga County Sheriff's Department
> Attn: Frank Bova, Sheriff
> 1215 West 3rd Street
> Cleveland, OH 44113
>
> With Copy to:
> Cuyahoga County Law Department
> Attn: Director of Law
> 2079 East Ninth Street
> 7th Floor
> Cleveland, OH 44115

14

MetroHealth_000058

Section XVIII.  Non-Discrimination.

The Parties agree that they shall not engage in any discriminatory practices prohibited by state or Federal law.

Section XIX.  Miscellaneous.

A.   This Agreement constitutes the entire agreement between the Parties regarding the subject matter hereof and all prior written or oral negotiations, representations, arrangements and/or agreements regarding the subject matter hereof are merged into and superseded by this Agreement.  The Parties acknowledge that there are no verbal or other written understandings, arrangements and/or agreements between the Parties relating to the subject matter of this Agreement.

B.   This Agreement may be amended, altered or changed only through a written document, clearly designated as an amendment to this specific Agreement signed by the Parties.

C.   The Parties agree and assert that this Agreement and the services and fees stated herein were negotiated at arms-length, and are intended to reflect the fair market value for the services.  Nothing in this Agreement is intended, and nor shall it be construed, to create, cause or induce any referrals of patients by one party to the other.

D.   No waiver by MetroHealth or CCSD and no refusal or neglect of MetroHealth or CCSD to exercise any right hereunder or to enforce compliance with the terms of this Agreement shall constitute a waiver of any provision herein with respect to any violations, actions or omissions hereunder, unless such waiver is expressed in writing by the waiving party.

E.   If services provided under this Agreement have an aggregate value or cost of Ten Thousand Dollars ($10,000) or more over a 12-month period, each party shall, until the expiration of four years after the furnishing of such services, make available upon written request by the Secretary of Health and Human Services or upon the written request of the Comptroller General of the United States, or by any of their duly authorized representatives, this Agreement, the books, documents, and records of the party that are necessary to verify the nature and extent of the cost of the services provided under this Agreement.

F.   Neither party may assign or transfer this Agreement, or any part hereof, without the other party's prior written consent, which shall not be arbitrarily withheld.  Nothing in this Agreement contemplates the creation of any third party beneficiaries of or to this Agreement.

G.   If any one or more of the provisions contained herein shall be invalid, illegal or unenforceable in any respect, those provisions shall be limited and enforced to the extent

15

MetroHealth_000059

they would be legal and the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

H.   This Agreement may be signed in any number of counterparts, all of which taken together shall constitute one original document.

I.   Headings and captions in this Agreement are for convenience or for reference only and shall not limit or affect the meaning hereof.

J.   All County contracts/agreements are subject to all applicable provisions of County Code, including, but not limited to, the Cuyahoga County Ethics Code, Cuyahoga County Inspector General Code, and Cuyahoga County Contracting and Purchasing Procedures Code, and all contractors shall comply with all such provisions of Code as an integral part of all County contracts. Copies of the Cuyahoga County Code are available on the County Council's web site at http://council.cuyahogacounty.us/.

K.   By entering into this Agreement, MetroHealth agrees on behalf of its officers, employees, subcontractors, subgrantees, agents or assigns, to conduct this transaction by electronic means by agreeing that all documents requiring county signatures may be executed by electronic means and that the electronic signatures affixed by the County to said documents shall have the same legal effect as if the signature was manually affixed to a paper version of the document. MetroHealth also agrees on behalf of the aforementioned persons to be bound by the provisions of chapters 304 and 1306 of the Ohio Revised Code as they pertain to electronic transactions, and to comply with the electronic signature policy of Cuyahoga County.

L.   The parties hereto acknowledge each is subject the Ohio Revised Code and other laws related to the keeping of and access to Public Records, including any and all applicable Sunshine Laws, open meeting requirements, and retention schedules affecting any and all manner of communication with the County and any and all documents in any format or media. In the event of a public records request, the compliance with which involves information which may potentially be either party's proprietary information, the party receiving the public record request (the "Requesting Party") will immediately forward same to the other party (the "Disclosing Party") for review. The Disclosing Party shall promptly review same and determine if any of the requested records, documents or other requested information is protected by the applicable laws governing trademarks and/or trade secrets, or other exclusionary provisions. If the Disclosing Party determines that certain protections apply which excuse the production of the requested materials, the Disclosing Party shall provide either consent or objection to the disclosure, or in the alternative, a sufficiently redacted version of responsive documents that the Disclosing Party is willing to disclose. The party objecting to the disclosure shall only do so in good faith and in accordance with applicable law.

M.   The provisions of Sections VII, IX, X, XV and XVI shall survive the termination of this Agreement for any reason.

N.   **METROHEALTH AGREES ON ITS BEHALF AND ON BEHALF OF ITS OFFICERS, EMPLOYEES, SUBCONTRACTORS, SUBGRANTEES, AGENTS**

16

MetroHealth_000060

OR ASSIGNS, THAT ALL CONTRACT DOCUMENTS REQUIRING COUNTY SIGNATURES MAY BE EXECUTED BY ELECTRONIC MEANS, AND THAT THE ELECTRONIC SIGNATURES AFFIXED BY THE COUNTY TO SAID DOCUMENTS SHALL HAVE THE SAME LEGAL EFFECT AS IF THAT SIGNATURE WAS MANUALLY AFFIXED TO A PAPER VERSION OF THE DOCUMENT. THE CONTRACTOR ALSO AGREES ON BEHALF OF THE AFOREMENTIONED ENTITY AND PERSONS, TO BE BOUND BY THE PROVISIONS OF CHAPTERS 304 AND 1306 OF THE OHIO REVISED CODE AS THEY PERTAIN TO ELECTRONIC TRANSACTIONS, AND TO COMPLY WITH THE ELECTRONIC SIGNATURE POLICY OF CUYAHOGA COUNTY.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the day and year first above written.

The MetroHealth System

By: _____
Akram Boutros, MD

Title: President and CEO

Date: 12/18/14

Cuyahoga County

By: _____
Edward FitzGerald

Title: County Executive

Date: 12/19/14

Approved As To Form
MHS Office of General Counsel
By SCL       Date 12/17/14

17

## EXHIBIT A
### TO THE AGREEMENT FOR THE PROVISION OF MANAGEMENT, HEALTHCARE AND RELATED SERVICES

#### SCHEDULE OF METROHEALTH PROFESSIONALS AND FEES

| MHS Correctional Medicine Projection 2015 | Amount |
|---|---|
| **Operating Summary** | |
| MHS Employees S/W - 20.5 FTEs (incl's ben/sick/vac/hol/pers) | 2,637,306 |
| Pathology Services | 204,000 |
| Pharmaceuticals Expense | 117,241 |
| Professional Liability Insurance | 206,473 |
| Imaging Services (xray, ultrasound & panorex) | 128,700 |
| Medical Supplies | 104,000 |
| **Operating Cost** | $ 3,397,720 |
| **Capital Project** | |
| Clinical Workstations, Printers, Scanners* | 35,000 |
| Network Cisco Server* | 33,800 |
| Dentistry Operatory System (incl Xray) | 237,038 |
| Pathology iStat POC Testing | 42,799 |
| Remaining Capital Carryover | 814,514 |
| **Capital Project Cost** | $ 1,163,151 |
| **Grand Total** | $ 4,560,871 |

| Annual Schedule Summary | Amount |
|---|---|
| FY 2015 | 3,397,720 |
| FY 2016 | 3,465,675 |
| FY 2017 | 3,534,988 |
| FY 2018 | 3,605,688 |
| FY 2019 | 3,677,800 |
| **Total Operating Cost** | $ 17,681,871 |
| **Capital Project Cost** | $ 1,163,151 |
| **Total 5 year Not-to-Exceed** | $ 18,845,022 |

A-1



| Job Code - Position | FTE Amt |
|---|---|
| DIR AMBULATORY | 1.00 |
| PHYSICIAN | 0.80 |
| MEDICAL DIRECTOR | 1.00 |
| MGR NURSE - AMBULATORY | 1.00 |
| EPIC ARCHITECT/SYSTEMS ANALYST | 2.00 |
| PARAMEDIC - CC GROUND TRANSPRT | 3.00 |
| PHLEBOTOMIST | 0.20 |
| ULTRASOUND TECH | 0.25 |
| RADIOLOGY SPECIALTY TECH I | 0.50 |
| ULTRASOUND TECH - PRN | 0.25 |
| RN - CLINICAL NURSE - PRN | 0.60 |
| APRN PROVIDER - AMBULATORY | 6.90 |
| DENTIST | 1.00 |
| DENTAL HYGIENIST | 1.00 |
| PATIENT NAVIGATOR | 1.00 |

Additional Service:

On-call Primary Care Physician  $600 / hr

On-call Psychology Physician  $600 / hr

Provider Conversions: Dentist, OB/GYN & Psychologist

A-2

MetroHealth_000063

**EXHIBIT B**
**TO THE AGREEMENT FOR THE PROVISION OF MANAGEMENT, HEALTHCARE**
**AND RELATED SERVICES**

Laboratory Services

CCSD will pay MetroHealth 100% of current MetroHealth Medicaid fee schedule for laboratory services

B-1

MetroHealth_000064